UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JASON S. AKANDE,                    :
                                    :
      Plaintiff,                    :
                                    :
v.                                  :      Case No. 3:11cv1125(RNC)
                                    :
U.S. MARSHALS SERVICE,              :
          et al.,                   :
                                    :
      Defendants.                   :


RULING AND ORDER

Plaintiff Jason Akande, a citizen of Nigeria, was convicted
by a jury of conspiracy to make a false statement in a passport
application, making a false statement in a passport application,
and making a false statement to a government agency.  He was
sentenced to forty-one months' imprisonment and three years'
supervised release.  He brings this action under Bivens v. Six
Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388
(1971), seeking damages for his post-sentencing detention at the
Donald W. Wyatt Detention Center, a privately operated prison in
Rhode Island.  He was detained at Wyatt for approximately one
month beyond the expiration of his prison sentence, at which time
he was transferred into the custody of Immigration and Customs
Enforcement ("ICE") for removal proceedings.  He claims that
because ICE failed to take him into custody within 48 hours of
the expiration of his sentence, as provided by applicable

regulations,[1] his continued detention thereafter violated his constitutional rights.[2]

The named defendants are: John Doe 1, U.S. Marshals Service ("USMS") Agent; John Doe 2, U.S. Bureau of Prisons ("BOP") Agent; John Doe 3, "Inmate System Management Coordinator" at Wyatt; John Doe 4, U.S. Probation Officer; Geoffrey M. Stone, Assistant United States Attorney ("AUSA"); and Grace Ann Wisniewski, ICE Special Agent.  Plaintiff has moved to amend the complaint to include a claim under the Fourth Amendment (ECF No. 94).  The defendants who have appeared in the action have moved to dismiss the complaint (ECF Nos. 62, 79) and they oppose the proposed amendment.

For reasons that follow, the motion to amend is granted and the amended complaint is deemed to include a claim based on the Fourth Amendment.  The motions to dismiss are granted in part and denied in part.  All claims against John Doe 3, John Doe 4, AUSA Stone and Agent Wisniewski are dismissed, as are the Eighth Amendment claims against John Doe 1 and 2.  The remaining claims

---

[1] See 8 C.F.R. § 287.7(d) ("Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.").

[2] Plaintiff's damages theory appears to be that had he been released from Wyatt, he could have absconded to England in violation of the conditions of his supervised release and thus avoided removal to Nigeria, where he currently resides.

against John Does 1 and 2 - specifically claims alleging a violation of procedural due process and the Fourth Amendment - are sufficiently supported to warrant service on these defendants. The U.S. Attorney is called on to assist in identifying them.[3]

I.    Background

    A. *Plaintiff's Allegations*

In 2005, plaintiff was arrested on state forgery and larceny charges and held at the Hartford Correctional Center. On May 24, 2005, he was indicted on federal charges of conspiracy to commit passport fraud, passport fraud, and making false statements to immigration authorities. See United States v. Akande, 3:05-cr-136-RNC (D. Conn.). On June 1, 2005, he appeared before a federal magistrate judge and was ordered detained. John Doe 1, a Deputy U.S. Marshal, was present. On May 22, 2006, plaintiff was sentenced in state court and on September 25, 2006, he was discharged from state to federal custody. He was later transferred to Wyatt pending trial on the federal charges.[4]

_____

[3] After John Does 1 and 2 are served, they will have an opportunity to file a motion to dismiss. Nothing in this ruling is binding on them with regard to the timeliness or sufficiency of the plaintiff's allegations, and nothing in this ruling limits their ability to raise any arguments or defenses, substantive or procedural, that they wish to raise in opposition to the plaintiff's claims.

[4] Plaintiff was transferred to the custody of the U.S. Marshal on September 25, 2006, but he remained in the physical custody of the state until December 9, 2008, when he was

On October 22, 2009, plaintiff was convicted in the federal case. On January 15, 2010, he was sentenced to forty-one months' imprisonment and three years' supervised release. Judgment entered on January 20. AUSA Stone and Agent Wisniewski were involved in investigating and prosecuting the case and were present for the sentencing. John Doe 4, the probation officer who prepared the presentence report, also attended the sentencing, as did John Doe 1 (or another Deputy Marshal).

The sentence reflected a significant upward variance due to a combination of aggravating factors. The judgment explains the reasons for the sentence and because it was available to the defendants at the pertinent time it provides context for the plaintiff's claims:

> After entering the United States without inspection, the defendant engaged in a fraudulent scheme to obtain lawful permanent residency. To achieve this objective, he induced a naive young woman, Chastidy Williams, to go through a marriage ceremony, which she soon regretted. He proceeded to use Ms. Williams and the unknowing services of numerous third parties to convince immigration authorities that he and Ms. Williams were living together in a bona fide marriage when in fact they were not. He also engaged in a fraudulent scheme to obtain a United States passport for his own use in order to be able to leave and re-enter the country. To achieve this objective, he offered to pay Samuel Carter, who was homeless, unemployed and in need of money, to apply for a passport using Carter's name and identifying information but the defendant's photograph. In addition to these frauds, the defendant has engaged in insurance fraud for which he has been convicted in

transferred to Wyatt.

4

state court.  The defendant obstructed justice during the investigation of the present case by encouraging Ms. Williams to refuse to speak with agents and by coaching her regarding what she should say to them. Since his arrest in the present case, he has continually asserted that he is the innocent victim of a wide-ranging conspiracy involving federal and state prosecutors, investigators, judges, and his own defense counsel.  He has initiated various legal proceedings, including grievances against his court-appointed counsel, claiming that he has been "sold out" by his counsel and unjustly convicted based on forged and fraudulent evidence. Proceeding pro se, he attempted to obstruct justice during the trial of the present case by making false representations to the jury during closing argument and urging them to conduct their own independent investigation.  This course of conduct continued after the trial when the defendant sent correspondence to trial jurors containing misrepresentations and urging them to correct their verdict.  The defendant's mental condition appears to be a factor in his overall conduct.  However, he is fully competent, as demonstrated by his more than minimally adequate performance as his own counsel at trial, during which he artfully took advantage of his pro se status to "testify" in the guise of questioning witnesses without taking the stand and subjecting himself to cross-examination.  The defendant's mental condition does not excuse his conduct.  He knows what he is doing.  His primary motivation appears to be to remain in the United States.  To achieve this objective, he is persisting in a strategy of blaming others for his plight and pursuing multiple legal proceedings against his own counsel and others.  In view of the totality of the circumstances, a sentence of imprisonment substantially in excess of the advisory range is necessary.

United States v. Akande, 3:05-cr-136(RNC) (ECF No. 408).

Near the end of January 2010, while detained at Wyatt, plaintiff received a letter from BOP Agent John Doe 2 stating that he had been held in federal custody past his sentence expiration date.  A copy of the letter was sent to John Doe 1 and

5

John Doe 3, a Wyatt employee.  There is no allegation that plaintiff took any action in response to the letter.  In particular, there is no allegation that he complained to anyone about his continued detention.  On February 18, 2010, plaintiff was transferred to ICE custody for removal proceedings.  He was eventually removed to Nigeria several years later.  He remained in the physical custody of ICE throughout the lengthy removal proceedings.

B. *Removal Proceedings*

The defendants have submitted documents related to plaintiff's removal proceedings.  See Def. John Doe 3's Resp. to Order (ECF No. 112-1); Fed. Def.'s Supp. Resp. to Order (ECF No. 119).  I take judicial notice of the documents.[5]

On January 4, 2010, a non-defendant ICE Agent issued a "Warrant of Arrest of Alien" (Form I-200) and a "Notice of

---

[5] In considering a motion to dismiss, a court may take judicial notice of a fact that is "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; see Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). Properly authenticated immigration warrants, detainers, and notices fall within this definition. Cf. Salemo v. Murphy, No. 11-cv-2525, 2012 WL 4714765, at *8 (S.D.N.Y. Sep. 27, 2012) (taking judicial notice of warrant submitted by government agent defendants); Guerrier v. Quillan, No. 10-civ-9453-CM, 2011 WL 4916295, at *3 (S.D.N.Y. Oct. 14, 2011) (same). Plaintiff objects to judicial notice of these forms, claiming they are forged.  See Pl.'s Motions to Hire Forensic Experts and for Sanctions (ECF Nos. 114, 115). He provides no basis for this assertion, however.  I therefore take judicial notice of the forms.

Custody Determination" (Form I-286). The Form I-200 stated that plaintiff was subject to being taken into custody by ICE based on evidence showing that he was in the country illegally. The Form I-286 stated that the Agent had determined that plaintiff should be detained by ICE without bond pending removal proceedings. On January 19, 2010, Agent Wisniewski served plaintiff with the Form I-200, Form I-286, and a "Notice to Appear" (Form I-862).[6] The Form I-862 ordered him to appear before an immigration judge at an unspecified date and time.

Agent Wisniewski also lodged an "Immigration Detainer - Notice of Action" (Form I-247) with Wyatt on January 19, 2010. The Form I-247 requested that Wyatt notify ICE "of the time of [the plaintiff's] release at least 30 days prior to [his] release or as far in advance as possible." It also stated "[f]ederal regulations (8 C.F.R. § 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding weekends and Federal holidays) to provide adequate time for ICE to assume custody of the alien." A non-defendant ICE Agent lodged a second Form I-247 on February 17, 2010, one day before plaintiff was taken into ICE custody.

C. *Procedural History*

Plaintiff's initial complaint, filed pro se, was dismissed

---

[6] Agent Wisniewski signed a certificate of service on January 19, 2010. Plaintiff refused to sign the certificate.

for failure to state a claim.  Plaintiff appealed and the Court of Appeals remanded for consideration of whether plaintiff sufficiently alleged constitutional violations or should be allowed to amend the complaint.  Plaintiff moved for leave to file an amended complaint that included some new allegations and a different group of defendants.  Leave to amend was granted but the amended complaint was dismissed for failure to state a claim.

Plaintiff again appealed, and the Court of Appeals again remanded to allow plaintiff "one more opportunity" to amend his complaint.  Akande v. U.S. Marshals Serv., 659 F. App'x 681, 685 (2d Cir. 2016).  The Court of Appeals ruled that plaintiff might be able to allege a plausible claim regarding his detention at Wyatt between January 15 and February 18, 2010, before he was transferred to ICE custody.  The mandate states that plaintiff alleges (or could allege) "that he had a right to be released from federal prison when his federal sentence ended absent some indication (such as a warrant) that another agency had lawfully exercised its authority over him."  Id. at 683.

Following the remand, plaintiff was directed to file an amended complaint in accordance with the mandate (ECF No. 51).[7]

_____

[7] The Court of Appeals had stated that consideration should be given to appointing counsel to represent the plaintiff.  After due consideration, I concluded that undertaking to obtain counsel for the plaintiff would be counter-productive. I thought that trying to find a lawyer who would agree to represent the plaintiff would be difficult and time-consuming in view of his history of filing grievances and lawsuits against his counsel.

Plaintiff moved to amend his complaint but did not include a proposed amended complaint that complied with the mandate (ECF No. 52). Plaintiff stated he could not amend his complaint as directed because his "legal papers" had been confiscated.[8] In an attempt to get the case moving, I construed the existing amended complaint as the operative pleading and appointed amicus counsel to identify and brief plaintiff's strongest claims (ECF No. 54).[9]

II. Legal Standard

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v.

---

More fundamentally, plaintiff prefers to represent himself. In addition to representing himself in the criminal case before this court, he has filed numerous cases pro se in this district and elsewhere. See Akande v. Jepsen, No. 3:16-cv-2137 (JCH) (D. Conn.); Akande v. Hassell, 4:12-cv-3612-RBP-HGD (N.D. Ala.) Akande v. Doe, No. 12-10741-RWZ (D. Mass.); Akande v. Crutchfield, No. 11-12288-RW (D. Mass.); Akande v. Baldwin, No. 11-11291-GAO (D. Mass.); Akande v. Long, No. 3:10-cv-1568 (RNC) (D. Conn.); Akande v. Koffsky, No. 3:10CV1062 (RNC) (D. Conn.); Akande v. Graser, No. 3:08cv188 (WWE) (D. Conn.); Akande v. Sobol, No. 3:09CV1663 (RNC) (D. Conn.); Akande v. Essington, No. 3:08CV679 (JCH) (D. Conn.); Akande v. Thibault, No. 3:06cv936 (PCD) (D. Conn.); Akande v. Estremera, No. 3:06CV873 (AWT) (D. Conn.).

[8] Plaintiff has made similar allegations in some of his other cases. See Akande v. Doe, No. 12-10742-RWZ, 2012 WL 165891 (D. Mass. May 10, 2012); Akande v. Crutchfield, No. 11-12288-RWZ, 2012 U.S. Dist. LEXIS 64212 (D. Mass. May 8, 2012).

[9] In addition to the "federal incarceration overtime" claim, the amended complaint raises various issues related to, among other things, plaintiff's receipt of "good time credits," his conditions of confinement, and alleged racial discrimination by investigators. Because the mandate's scope is limited to the prolonged detention claim, I do not address other issues.

<u>Twombly</u>, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Factual allegations are accepted as true and viewed in the light most favorable to the plaintiff.  <u>Id.</u>  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are disregarded.  <u>Id.</u>  In addition, a <u>pro</u> <u>se</u> complaint must be liberally construed to "raise the strongest arguments it suggests."  <u>Abbas v. Dixon</u>, 480 F.3d 636, 639 (2d Cir. 2007).

## III. <u>Discussion</u>

Plaintiff and amicus counsel state that the amended complaint raises two claims: (1) an Eighth Amendment claim based on the defendants' deliberate indifference to plaintiff's right to be released when his sentence expired, and (2) a due process claim based on his unauthorized detention.  In addition, plaintiff seeks leave to amend the complaint to add a claim based on the Fourth Amendment.

Defendants move to dismiss arguing that plaintiff has failed to state a plausible claim and further amendments would be futile.  John Doe 3 argues that a <u>Bivens</u> action cannot be maintained against him because he is an employee of a privately operated prison.  AUSA Stone and Agent Wisniewski argue that they and any other unnamed federal employees -- including John Does 1,

2, and 4 -- are entitled to absolute or qualified immunity.

I conclude that plaintiff's motion to amend to add a Fourth Amendment claim should be granted, all claims against John Doe 3, John Doe 4, AUSA Stone and Agent Wisniewski should be dismissed, and the Eighth Amendment claim against John Does 1 and 2 should be dismissed based on qualified immunity. I also conclude that John Does 1 and 2 are potentially liable for a violation of procedural due process and the Fourth Amendment and call on the U.S. Attorney to assist in identifying these defendants so they can be served.

A. <u>Motion to Amend</u>

Plaintiff moves to amend the complaint to add a Fourth Amendment claim (ECF No. 94). Defendants argue that the proposed amendment is time-barred under the applicable statute of limitations (ECF No. 106, 112). Plaintiff has not responded to this argument but it appears that the proposed amendment probably would relate back to the date of the original complaint. <u>See</u> Fed. R. Civ. P. 15(c) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading . . . ."). In view of the relation back doctrine, I assume for present purposes that the claim is not

time-barred.[10]

Apart from the issue of timeliness, plaintiff's request for leave to amend is complicated by his failure to comply with the order directing him to file an amended complaint in conformity with the mandate on or before January 16, 2017. As discussed above, he claimed that he could not comply with the order due to the confiscation of his legal papers. The defendants subsequently filed renewed motions to dismiss on March 3 and April 24, 2017. Plaintiff filed the present motion to amend on May 31, 2017, several months after the January 16 deadline. Plaintiff claims that "newly discovered evidence" supports a claim based on the Fourth Amendment, but he cites no such evidence. He also does not explain why he could not have added a Fourth Amendment claim prior to the January 16 deadline or, for that matter, at the time of his original complaint.

Though plaintiff may have willfully failed to comply with the order requiring him to file an amended complaint in accordance with the mandate by the January 16 deadline, I don't think his noncompliance should preclude from raising a claim based on the Fourth Amendment. Under Rule 15, leave to amend ordinarily should be granted when it promotes resolution of issues on the merits and there is no prejudice to the opposing

_____

[10] As noted earlier, once John Does 1 and 2 are identified and served, they may move to dismiss on any basis.

party.  Permitting the plaintiff to add a claim under the Fourth Amendment facilitates a resolution on the merits and causes no prejudice.  Moreover, it is doubtful that plaintiff's failure to raise a Fourth Amendment claim at an earlier point in the litigation was tactical.  It is more likely that he did not realize he might have a Fourth Amendment claim until after he read the defendants' briefs in support of the motions to dismiss.  In view of the plaintiff's pro se status, which requires that his allegations be interpreted to raise the strongest arguments they suggest, I conclude that the motion to amend should be granted.  Accordingly, the amended complaint is deemed to include a claim based on the Fourth Amendment.

   B. John Doe 3, John Doe 4, AUSA Stone and Agent Wisniewski

      i. *Bivens Actions Against Private Parties*

   Under Bivens and its progeny, a plaintiff may bring an action for damages against a federal officer alleged to have violated certain constitutional rights, including the rights plaintiff has invoked here.  See generally Correctional Servs. Corp. V. Malesko, 534 U.S. 61, 66-70 (2001).  However, implying the existence of a Bivens action is inappropriate when the "claim focuses on a kind of conduct that typically falls within the scope of traditional state tort law" and "state tort law provides an 'alternative, existing process' capable of protecting the constitutional interests at stake."  Minneci v. Pollard, 565

U.S. 118, 125 (2012) (quoting <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007).

John Doe 3 argues that, as an employee of a privately operated prison, he is not subject to suit under <u>Bivens</u>. His argument is supported by recent case law declining to recognize <u>Bivens</u> claims in the context of privately operated prisons. <u>See</u> <u>Minneci</u>, 565 U.S. at 131 (plaintiff may not bring <u>Bivens</u> claim alleging deliberate indifference to medical needs against "privately employed personnel working at privately operated federal prison"); <u>Malesko</u>, 534 U.S. at 70-73 (ability of prisoner to bring state tort law damages action against employee of privately managed prison weighed against implying existence of <u>Bivens</u> remedy against prison-management company).

Plaintiff argues that his case is distinguishable from <u>Minneci</u> because that case involved only an Eighth Amendment claim, whereas his case involves other claims as well. Amicus counsel argues that the Court should recognize the existence of a <u>Bivens</u> claim because the analogous state law claim -- false imprisonment under Rhode Island law -- is narrower in scope than the constitutional claims plaintiff has raised here.

I agree with John Doe 3 that he is not subject to suit under <u>Bivens</u>. The principal question is "whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the [constitutional

14

provision] while also providing roughly similar compensation to victims of violations." Minneci, 565 U.S. at 129. The analogous "[s]tate-law remedies and a potential Bivens remedy need not be perfectly congruent." Id. There is no reason to think Rhode Island tort law fails to provide incentives for employees at Wyatt to release prisoners whose sentences have expired. Nor is there any reason to think a successful suit under Rhode Island law would fail to provide a prisoner with reasonable compensation comparable to that available under Bivens.

ii. *Personal Involvement*

"[A] plaintiff bringing a Bivens claim 'must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Ganek v. Leibowitz, 874 F.3d 73, 92 (2d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). Plaintiff adequately alleges personal involvement in the alleged violation of his rights on the part of Deputy Marshal John Doe 1 and BOP Agent John Doe 2 because his allegations, generously construed, support an inference that they were responsible for his post-sentencing detention at Wyatt and continued to detain him after they knew his sentence had expired. See also 18 U.S.C. § 3621 (person sentenced to imprisonment "shall be committed to the custody of the [BOP]"); 28 C.F.R. § 0.111(k) (USMS retains custody of federal prisoners until committed to BOP); Judgment, Akande,

3:05-cr-136(RNC) (ECF No. 408) (Jan. 20, 2010) (stating the "defendant is hereby committed to the custody of the [BOP]").

However, the amended complaint includes no allegations suggesting that AUSA Stone or John Doe 4 (the probation officer) were personally involved in the alleged violation. Plaintiff alleges that they were part of the federal "prosecution team" and he asserts that they knew his sentence was effectively a sentence of time-served. But he does not allege facts permitting an inference that either of them caused his continued detention at Wyatt.

Plaintiff also fails to allege facts showing personal involvement in the alleged violation on the part of Agent Wisniewski. The detainer form she signed on January 19, 2010, requested Wyatt to hold the plaintiff for up to 48 hours beyond the expiration of his sentence to allow ICE to effect an arrest based on the immigration warrant. Plaintiff's allegations do not support a reasonable inference that Agent Wisniewski had a duty to arrange for his release into noncustodial status after that 48-hour period expired. Any legal duty to release the plaintiff into the community at that point, assuming such a duty existed, rested with the agency responsible for his continued confinement -- the USMS or BOP -- not ICE. See Julio Trujillo Santoyo v. United States, No. 5:16-CV-855-OLG, 2017 WL 6033861, at *4 (W.D. Tex. Oct. 18, 2017) (dismissing unlawful detention claims against

ICE agents who filed detainer but failed to arrest plaintiff, where plaintiff was held by municipal defendant for additional 76 days beyond 48-hour window).

    C. <u>John Doe 1 and John Doe 2</u>

        i. *Qualified Immunity Standard*

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011); <u>see</u> <u>District of Columbia v. Wesby</u>, 138 S.Ct. 577, 589-90 (2018).  Qualified immunity is an affirmative defense, but a motion to dismiss based on qualified immunity may be granted if "the facts supporting the defense appear on the face of the complaint."  McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) (citation omitted).

"To determine whether a right is clearly established, [courts] look to (1) whether the right was defined with reasonable specificity, (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful."  Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010) (citation omitted). Even if no Supreme Court or Court of Appeals precedent is

directly on point, a right may be clearly established if decisions by the Court of Appeals or other courts "clearly foreshadow a particular ruling on the issue." Id. (quotation omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Wesby, 138 S. Ct. at 590; see also Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

ii. *Eighth Amendment*

The Court of Appeals has "suggested . . ., and other courts within and without this Circuit have held, that detention beyond that authorized by law may violate the Eighth Amendment." Sudler v. City of New York, 689 F.3d 159, 169 n.11 (2d Cir. 2012) (citing Calhoun v. N.Y. State Div. of Parole Offs., 999 F.2d 647, 654 (2d Cir. 1993); Sample v. Diecks, 885 F.2d 1099, 1108-10 (3d Cir. 1989); Haygood v. Younger, 769 F.2d 1350, 1354-55 (9th Cir. 1985)). "To establish an Eighth Amendment violation, [a plaintiff] must show: (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety." Jabbar v. Fischer, 683

F.3d 54, 57 (2d Cir. 2012) (quotation omitted).[11]

Continued detention of a sentenced prisoner after the expiration of his sentence can entail a "sufficiently serious" deprivation under the Eighth Amendment if it lasts for a "significant period beyond" the expiration date. See Sample, 885 F.2d at 1109. Many courts have found lengthy periods sufficient.[12] But, as the mandate states, the minimum period of time required to support a constitutional claim is "not a settled issue." Akande, 659 F. App'x at 684 (citation omitted). The Court of Appeals has held that five days is not sufficiently serious. Calhoun, 999 F.2d at 654. Some courts have held that periods longer than five days -- including periods approaching

---

[11] Because plaintiff was detained following the expiration date of his sentence based on the ICE detainer, his claim may be governed by the Fourth Amendment and the Due Process Clause of the Fifth Amendment, rather than the Eighth Amendment. See Morales v. Chadbourne, 793 F.3d 208, 217 (1st Cir. 2015) (plaintiff who was detained based solely on ICE detainer was "subjected to a new seizure for Fourth Amendment purposes" because she was "kept in custody for a new purpose after she was entitled to release"); Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (pretrial detainee's claims of unconstitutional conditions of confinement governed by due process, not Eighth Amendment). Even so, I address the motions to dismiss as if the Eighth Amendment does apply.

[12] See, e.g., Haygood, 769 F.2d at 1353 (five years); Sample, 885 F.2d at 1112 (270 days); Shorts v. Bartholomew, 255 Fed. Appx. 46, 51 (6th Cir. 2007) (219 days); Alston v. Read, 678 F. Supp. 2d 1061, 1076 (D. Haw. 2010) (145 days), rev'd on other grounds 663 F.3d 1094 (9th Cir. 2011).

thirty-four days -- are insufficient.[13]  At the time of the
events at issue here, one district court in this Circuit had
ruled without much discussion that forty-seven days is
sufficient.  See Rivera v. Carroll, No. 07-cv-7847 (RJS), 2009 WL
2365240, at *7 (S.D.N.Y. Aug. 3, 2009).  Since then, courts in
this Circuit have held that periods up to twenty-one days are
insufficient.  See Brunson v. Duffy, 14 F. Supp. 3d 287, 294
(S.D.N.Y. 2014); Hayes v. Annucci, No. 14-CV-8845 (NSR), 2016 WL
1746109, at *5 (S.D.N.Y. Apr. 29, 2016).

     Accepting plaintiff's allegations as true, he received
notice from the BOP in late January that his sentence had
expired.  As of that date, John Does 1 and 2 may have understood
that plaintiff was entitled to be released unless ICE assumed
legal custody.  ICE does not take custody of every person
potentially subject to removal.  In this case, however, because
the plaintiff had been convicted of multiple federal and state
offenses involving fraud, the Attorney General was required by
law to take him into custody for removal proceedings.[14]  In

---

[13] See Herron v. Lew Sterrett Justice Ctr., No. 3:07-cv-0357-
N, 2007 WL 2241688, at *1 (N.D. Tex. Aug. 6, 2007) (31 days);
Brims, 2004 WL 1403281, at *2 (6 days).

[14] ICE initially charged plaintiff under 8 U.S.C. §
1227(a)(2)(A)(ii), which makes deportable any alien who has been
convicted of two crimes of "moral turpitude."  As a result, he
was subject to mandatory detention. See 8 U.S.C. § 1226(c)(1)
("The Attorney General shall take into custody any alien who . .
. is deportable by reason of having committed any offense covered
in section 1227(a)(2)(A)(ii) . . . .").  ICE later withdrew the

addition, ICE had informed Wyatt that it was going to detain him pending removal proceedings and ICE had requested sufficient notice prior to the expiration of his sentence to enable it to take him into custody within the 48-hour window provided by the regulations.  ICE took custody of the plaintiff on February 18, approximately two to three weeks after it became known that his sentence had expired.  Under the cases cited above, detaining the plaintiff for this brief period of time to enable ICE to take him into custody did not violate the Eighth Amendment.

Assuming that at some point during this period of time the length of plaintiff's continued confinement did become sufficiently serious to violate the Eighth Amendment, it would not have been clear to every officer in the position of John Does 1 and 2 that the constitutional limit had been exceeded.  See Wesby, 138 S.Ct. at 590 ("clearly established" standard requires that the legal principle clearly prohibit officer's conduct in the particular circumstances before him).  Accordingly, plaintiff's Eighth Amendment claim is dismissed.

iii. *Due Process*

It is well-established that "an inmate has a liberty interest in being released upon the expiration of his maximum

---

moral turpitude charge because the underlying convictions were on direct appeal, and plaintiff was ordered removed on another basis. See Akande v. Hassell, 4:12-cv-3612 (RBP)(HGD), 2013 WL 5774953, at *1 n.1 (N.D. Ala. Aug. 21, 2013).

term of imprisonment." Calhoun, 999 F.2d at 653. When the inmate is held on a federal sentence, this liberty interest is protected by the Due Process Clause of the Fifth Amendment, which plaintiff invokes here. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Whether plaintiff is claiming a violation of substantive or procedural due process or both is unclear.[15] I address both theories and conclude that he cannot establish a substantive due process claim but may be able to establish a procedural due process claim.

a. Substantive Due Process

Some courts analyze prolonged detention claims under the rubric of substantive due process. See Davis, 375 F.3d at 718; Armstrong v. Squadrito, 152 F.3d 564, 577 (7th Cir. 1999). It is not clear that substantive due process, rather than a more specific constitutional provision, applies to plaintiff's detention after his sentence expired.[16] Even assuming it does,

---

[15] The mandate cites one case involving a substantive due process claim, see Davis v. Hall, 375 F.3d 703, 718 (8th Cir. 2004), and another that could be interpreted to involve substantive or procedural due process, see Douthit v. Jones, 619 F.2d 527, 532 (5th Cir. 1980) (citing Baker v. McCollan, 443 U.S. 137 (1979)).

[16] The Third Circuit has ruled that under the "more-specific-provision" rule, prolonged detention claims are governed by the Eighth Amendment, not substantive due process. See Wharton v. Danberg, 854 F.3d 234, 246-47 (3d Cir. 2017). Case law in this Circuit suggests that the Court of Appeals would reach the same conclusion. Following Calhoun, 999 F.2d at 653-54, courts in this Circuit have analyzed prolonged detention claims exclusively under Eighth Amendment standards; and any

plaintiff's allegations do not support a claim.

"[S]ubstantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, . . . not against government action that is incorrect or ill advised."  Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y., 660 F.3d 612, 626 (2d Cir. 2011) (quotation omitted).  To state a substantive due process claim, plaintiff must allege facts showing that (1) the defendants were deliberately indifferent to his right to be released (2) under circumstances that shock the conscience.  See Armstrong, 152 F.3d at 570; accord Goldberg v. Hennepin Cty., 417 F.3d 808, 811 n.3 (8th Cir. 2005).

Deliberate indifference requires more than mere negligence, but can include "culpable recklessness," that is, "a conscious disregard of a substantial risk of serious harm."  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted).  When a plaintiff claims deliberate indifference based on

accompanying due process challenges are typically analyzed under procedural due process standards.  See, e.g., Hayes, 2016 WL 1746109, at *2; Brunson, 14 F. Supp. 3d at 292; Todd v. Hatin, No. 2:13-CV-05, 2013 WL 3990815, at *2 (D. Vt. Aug. 5, 2013); Lozada v. Warden Downstate Corr. Facility, No. 10 CIV. 8425 RWS, 2012 WL 2402069, at *3 (S.D.N.Y. June 26, 2012); McCants v. Jones, No. 98-CV-6337FE, 1999 WL 804009, at *4 n.2 (W.D.N.Y. Sept. 30, 1999). But see Grayson, 2004 WL 2106586, at *9 (dismissing substantive due process claim based on sentence miscalculation); see also Russo v. City of Bridgeport, 479 F.3d 196, 212 (2d Cir. 2007) (holding that pretrial unlawful detention claims are governed by the Fourth Amendment, not substantive due process).

prolonged detention, courts undertake a three-part inquiry:
(1) did the defendant have "knowledge of the prisoner's problem
and thus the risk that unwarranted punishment was being, or would
be, inflicted"; (2) did the defendant "fail[] to act or t[ake]
only ineffectual actions under circumstances indicating that his
or her response to the problem was a product of deliberate
indifference to the prisoner's plight"; and (3) was there a
"causal connection between the official's response to the problem
and the infliction of the unjustified detention"?  See Sample,
885 F.2d at 1110.

    Accepted as true and liberally construed, the allegations of
the amended complaint permit an inference that John Does 1 and 2
may have been deliberately indifferent to plaintiff's right to be
released.  Cf. Brims v. Burdi, No. 03-cv-3159 (WHP), 2004 WL
1403281, at *2 (S.D.N.Y. June 23, 2004) (defendants responsible
for releasing prisoners who "knew, but ignored" imminent release
date exhibited deliberate indifference).  As of the end of
January, both defendants were aware that plaintiff's sentence had
expired.  As agents of the USMS and BOP, they may have been
responsible for his continued detention.  See Sample, 885 F.2d at
1110 (noting relevance of whether defendant "had the
responsibility to review inmates' sentencing status and the
authority to direct the release of inmates whose time had been
served").  There is no indication that John Doe 1 took steps to

follow up on the plaintiff's custodial status after learning that his sentence had expired.  And although John Doe 2 did notify the plaintiff and John Doe 1 of the expiration of the sentence, there is no indication he took any other action.

Plaintiff's substantive due process claim fails because, even assuming the defendants were deliberately indifferent, their conduct was not conscience-shocking.  Plaintiff has not alleged that either defendant failed to act despite repeated complaints about his situation.  See Davis, 375 F.3d at 707-08; Armstrong, 152 F.3d at 580; see also Barnes v. Dist. of Columbia, 793 F. Supp. 2d 260, 279-80 (D.D.C. 2011) (inadequate administrative procedures resulting in frequent detentions of between 4 to 21 days beyond expiration of sentence shocks the conscience).  As mentioned earlier, there is no allegation that plaintiff complained even once after he was notified by John Doe 2 that his sentence has expired.  Moreover, the relatively brief period of his continued confinement at Wyatt beyond his release date pending his transfer into ICE custody, although not dispositive, weighs against finding defendants' conduct conscience-shocking.  See Grayson, 2004 WL 2106586, at *8-9 (finding potential deliberate indifference but rejecting substantive due process claim based on 20-day detention); see also Cty. of Sacramento v. Lewis, 523 U.S. 833, 853 (1998) ("When . . . *extended* opportunities to do better are teamed with *protracted* failure

even to care, indifference is truly shocking." (emphasis added)).
The substantive due process claim is therefore dismissed.

### b. Procedural Due Process

Procedural due process involves a two-pronged inquiry: (1)
"whether there exists a liberty or property interest of which a
person has been deprived," and (2) "if so . . . whether the
procedures followed by the [defendant] were constitutionally
sufficient." Swarthout v. Cooke, 562 U.S. 216, 219 (2011)
(quotation omitted); see also Calhoun, 999 F.2d at 653 ("Due
process requires, as a general matter, an 'opportunity to be
heard at a meaningful time and in a meaningful manner.'" (quoting
Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

Here, plaintiff had a "liberty interest in being released
upon the expiration of his maximum term of imprisonment."
Calhoun, 999 F.2d at 653.  As the mandate states, at the
expiration of his sentence, he was "presumptively entitled to be
released from prison."  Akande, 659 F. App'x at 684.  A violation
of procedural due process may occur when a person is deprived of
his liberty for a period of time that would not support an Eighth
Amendment claim.  See Calhoun, 999 F.2d at 653-54 (addressing
procedural due process claim despite dismissal of Eighth
Amendment claim); McDay v. Travis, 303 F. App'x 928, 929-30 (2d
Cir. 2008) (vacating dismissal of procedural due process claim
brought by plaintiff who was detained two days beyond his maximum

release date).

Plaintiff alleges that he was held by John Doe 1 and John Doe 2 after they knew his sentence had expired. If the defendants' continued detention was not authorized by law, he may be able to prove that they violated procedural due process. See Armstrong, 152 F.3d at 578 ("In a constitutional sense, how much more basic could it get - jails cannot confine people without the authority to do so."); Douthit, 619 F.2d at 532 ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.").[17] Accordingly, the motion to dismiss the procedural due process claim is denied.[18]

### iv. Fourth Amendment

False arrest and false imprisonment claims under the Fourth Amendment are analyzed according to "the [tort] law of the state in which the arrest occurred." Russo, 479 F.3d at 203 (quotation

---

[17] See also Uroza v. Salt Lake Cty., No. 2:11CV713DAK, 2014 WL 4457300, at *3 (D. Utah Sept. 10, 2014) (plaintiff detained after expiration of 48-hour detainer window "without receiving any process" stated procedural due process claim); Rivas v. Martin, 781 F. Supp. 2d 775, 780 (N.D. Ind. 2011) (same). But see Luna v. Valdez, No. 3:15-CV-3520-D, 2018 WL 684897, at *8 (N.D. Tex. Feb. 2, 2018) (plaintiff failed to state procedural due process claim based on detention beyond 48-hour period, where detention was based on random and unauthorized acts of individual defendants and state provided process for challenging confinement).

[18] This ruling is without prejudice to the filing of a motion to dismiss by John Does 1 and 2.

omitted).  To prove a false imprisonment claim under Rhode Island law, plaintiff must show (1) the defendant intended to confine him, (2) he was conscious of the confinement, (3) he did not consent, and (4) the confinement was not otherwise privileged. Morales v. Chadbourne, 235 F. Supp. 3d 388, 404 (D.R.I. 2017) (citing Moody v. McElroy, 513 A.2d 5, 7 (R.I. 1986)).

As noted above, some courts treat continued detention on the basis of an ICE detainer as a "new seizure for Fourth Amendment purposes."  See Morales, 793 F.3d at 217; see also Ramos-Macario v. Jones, No. 3:10-813, 2011 WL 8316678, at *11-12 (M.D. Tenn. Mar. 2, 2011) (plaintiff kept because of detainer after sentence expired states Fourth Amendment claim); Francis v. Fiacco, No. 15-cv-901 (MAD/ATB), 2016 WL 3448617, at *10-11 (S.D.N.Y. June 20, 2016) (same).  If the defendants held plaintiff without authority, he may be able to prove a Fourth Amendment claim. Accordingly, the motion to dismiss the Fourth Amendment claim is denied.[19]

D.  Valentin Order Regarding John Does 1 and 2

Pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997), the U.S. Attorney is ordered to ascertain the identity and service addresses of John Does 1 and 2.  See Snoussi v. Bivona, No. 05-CV-3133 (RJD) LB, 2008 WL 3992157, at *1 (E.D.N.Y. Aug.

_____

[19] Again, this ruling is without prejudice to the filing of a motion to dismiss by John Does 1 and 2.

22, 2008) (seeking assistance of U.S. Attorney in identifying John Does); see also Fed. Def.'s Resp., at 3 (ECF No. 106) ("Should the Court order AUSA Stone or ICE Agent Wisniewski to take action with respect to identifying John Doe 1 and/or 2, we will promptly proceed in attempting to do so and update the Court."). The U.S. Attorney "need not undertake to defend or indemnify [either] individual at this juncture. This Order merely provides a means by which [plaintiff] may name and properly serve defendant[s] . . . as instructed by the Second Circuit in Valentin." Brunson v. City of New York Dep't of Correction, No. 16CV1471RRMLB, 2016 WL 4203485, at *3 (E.D.N.Y. Aug. 9, 2016).

III. Conclusion

Accordingly, plaintiff's motion to amend (ECF No. 94) is granted, John Doe 3's motion to dismiss (ECF No. 62) is granted, and the federal defendants' motion to dismiss (ECF No. 79) is granted in part and denied in part. All claims against John Doe 4, AUSA Stone and Agent Wisniewski are dismissed and the Eighth Amendment claim against John Does 1 and 2 is also dismissed.

The case will continue as to John Does 1 and 2. The amended complaint is construed to allege Bivens claims for damages against these defendants in their individual capacities for detaining the plaintiff at Wyatt after they knew his sentence had expired in violation of his right to be free from unreasonable

seizures under the Fourth Amendment and his right to procedural due process under the Fifth Amendment. The U.S. Attorney will undertake to identify John Does 1 and 2 and file a statement on the docket containing their names and addresses for service of process. To be timely, the statement should be filed on or before April 9, 2018.

So ordered this 19th day of March 2018.

                                    /s/
                          Robert N. Chatigny
                          United States District Judge